# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | |
|---|---|
| RITA GAGE, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * |
| | *   CV 511-065 |
| DIVERSIFIED RESOURCES, INC., | * |
| KATHY YARBROUGH, PATRICIA | * |
| ALBRITTON, CECELIA HARPER, | * |
| DONNA ROBINSON, and | * |
| UNKNOWN AND UNNAMED PARTIES, | * |
| | * |
| | * |
| Defendants. | * |

## ORDER

Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 51. For the reasons stated below, Defendants' motion is **GRANTED**.

## BACKGROUND

Plaintiff Rita Gage ("Plaintiff") is suing her former employer, Diversified Resources, Inc. ("Diversified"), Diversified's owners, Kathy Yarbrough ("Yarbrough") and Patricia Albritton ("Albritton"), and two Diversified employees, Cecelia

Harper ("Harper") and Donna Robinson ("Robinson") (collectively, "Defendants").[1]

In April 2008, Plaintiff began working at Diversified as a temporary employee, assigned to the position by Kelley Services. Sometime around January 2009, Plaintiff was hired to a permanent position with Diversified. Plaintiff worked at Diversified without incident until February 2010, when she had a heated exchange with her co-worker, Cecelia Harper. According to Plaintiff's Complaint, Harper lashed out at Plaintiff, making several aggressive comments, including "I hate you and your kind," "I thought you were my friend, you ain't shit," "You are not what I thought what you were," and "Get your ass out of my office Bitch."[2] Compl. 7, Dkt. No. 1.

Plaintiff claims that she reported the February 2010 incident to Yarbrough and Albritton, the owners of Diversified. Compl. 8. Plaintiff also claims that she requested a transfer to another office location. Id. In response, Yarbrough and Albritton scheduled a meeting with Plaintiff and Harper. During the meeting, Yarbrough and Albritton discussed the February 2010

---

[1] Plaintiff also included "unknown and unnamed parties" as defendants in the caption of her Complaint. At no point in the litigation has Plaintiff identified these parties or their role in the events. Consequently, any claims asserted against "unknown and unnamed parties" are dismissed.

[2] Plaintiff's Complaint also states that Harper used "several racial epithets" during the interchange, but Plaintiff never identified what those comments were. Moreover, in Plaintiff's deposition, she was pressed to recount all words that Harper said during the February 2010 interchange, and none of the statements were racial epithets. Gage Dep. 171, Dkt. No. 52, Ex. 1.

incident and Plaintiff's work performance. According to Plaintiff, Harper admitted many of her comments, but Yarbrough and Albritton did not seem overly concerned. Plaintiff also contends that Yarbrough and Albritton voiced their dissatisfaction with Plaintiff's performance in various areas.

Plaintiff claims that sometime after the meeting Yarbrough and Albritton began "requiring plaintiff to perform a series of duties that she was not hired to perform and was clearly not qualified to perform." Compl. 9. While the precise nature of the "duties" is not clear, it seems that Plaintiff was most perturbed by Yarbrough and Albritton's request that Plaintiff install Skype, a popular online communications software, on Diversified's computers. Compl. 11.

Over the next several months, the relationship between Plaintiff and Yarbrough, Albritton, and Harper continued to sour. Plaintiff received a negative performance evaluation and began to feel uncomfortable in the office. Eventually, Plaintiff elected to resign her employment. On June 16, 2011, Plaintiff submitted her resignation, and indicated her willingness to work an additional two weeks from that date. Pl.'s Resp., Dkt. No. 71, Ex. 4. On June 20, 2011, Plaintiff arrived at work to find Yarbrough and Albritton waiting near the entrance to Diversified's offices. Yarbrough and Albritton directed Plaintiff to the building's conference room. Once the

AO 72A
(Rev. 8/82)

three were inside the conference room, Yarbrough and Albritton formally accepted Plaintiff's resignation letter, and informed her that she would no longer be permitted to work at Diversified. Plaintiff claims she was very intimidated and felt panicked by the circumstances of the meeting. Plaintiff forced her way out of the conference room and collapsed near the entry way to Diversified's offices. Someone at Diversified called 911 and an ambulance was dispatched. Plaintiff was taken to the hospital where she was kept overnight for observation. Ultimately, medical professionals determined that Plaintiff had suffered an anxiety attack.

Two days after she was terminated, Plaintiff filed this lawsuit. Plaintiff's Complaint asserts three causes of action: (1) a claim of racial discrimination and the existence of a hostile work environment in violation of 42 U.S.C. § 1981, (2) a claim of discrimination in violation of the Americans with Disabilities Act ("ADA"), and (3) a claim for intentional infliction of emotional distress.[3] Defendants move to dismiss all claims and for summary judgment on all of Plaintiff's claims.

---

[3] There was some ambiguity as to nature of Plaintiff's claims, but Plaintiff clarified in her deposition that her claims are limited to only three theories. Gage Dep. 242, Dkt. No. 52, Ex. 1.

## LEGAL STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Collins v. Homestead Corr. Inst., No. 10-12824, 2011 WL 4584817, at *2 (11th Cir. Oct. 5, 2011) (quoting Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990)). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

**DISCUSSION**

**I. Section 1981 Claims**

Defendants argue that Plaintiff has failed to plead a claim upon which relief may be granted under § 1981. Though Plaintiff's Complaint is not a model of clarity, it appears that her § 1981 claims are based on racial discrimination and the existence of a hostile work environment. Defendants seek summary judgment on both theories.

**A. Racial Discrimination**

Plaintiff claims that she was subjected to discrimination in violation of 42 U.S.C. § 1981. Defendants contend that they are entitled to summary judgment because Plaintiff has failed to present any evidence – direct or circumstantial – that she was discriminated against by any of the Defendants because of her race.

A plaintiff claiming that her employer discriminated against her may prove her claim through direct evidence or circumstantial evidence. Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000).[4] "Direct evidence is that which shows an employer's discriminatory intent 'without any inference or presumption.'" Id. Direct evidence is

---

[4] Although the plaintiff in Clinch asserted claims under Title VII, not § 1981, as Plaintiff does here, Title VII and § 1981 have the same requirements of proof and it is appropriate to use the same analytical frameworks for both theories. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

6

encountered infrequently, and "is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." Schweers v. Best Buy, Inc., 132 F. App'x 322, 324 (11th Cir. 2005); Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (internal quotations omitted). The record in this case contains no direct evidence of racial discrimination by the Defendants.

Where a claim of racial discrimination is based on circumstantial evidence, a plaintiff must show sufficient evidence to allow a reasonable jury to determine that the plaintiff has satisfied the elements of a *prima facie* case of discrimination. Hinson, 231 F.3d at 828. In order to establish a *prima facie* case of racial discrimination, a plaintiff must show: "(1) [she] belongs to a racial minority; (2) [she] was qualified to do the job; (3) [she] was subjected to an adverse job action; and (4) [her] employer treated similarly situated employees outside [her] classification more favorably." Webb v. Int'l Bus. Machs. Corp., 458 F. App'x 871, 875 (11th Cir. 2012) (citing Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003)). Defendants argue that Plaintiff has failed to present evidence that she suffered an adverse employment action or that Defendants treated similarly-situated

7

employees outside of Plaintiff's protected class any more favorably. Defs.' Mot. Summ. J. 9-10.

Plaintiff has been less than clear in defining the adverse employment action to which she was subjected. In order to show an adverse employment action, a plaintiff must show a "serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001). However, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). "Criticisms, negative evaluations, and temporary and non-substantial changes in work assignments are not actions that have a 'serious and material effect' on the terms and conditions of employment." White v. Hall, 389 F. App'x 956, 960 (11th Cir. 2010) (citing Davis, 245 F.3d at 1241-44). In her Complaint as well as her deposition, Plaintiff contends that she was forced to perform tasks for which she was not qualified and that were outside of her normal job duties, namely installing Skype on office computers. Compl. 11; Gage Dep. 135. Gage admits that she succeeded in installing the program, and that she was paid her normal rate of pay while installing the program. Gage. Dep. 140. Given these circumstances, requiring Plaintiff to install software on office computers does not constitute an adverse employment action for

8

the purposes of a § 1981 claim. See White, 389 F. App'x at 960 (holding that giving a minority trainee more difficult assignments and less favorable performance evaluations than non-minority trainees does not constitute an adverse employment action).

Plaintiff also claims that Defendants terminated her and that her termination constitutes an adverse employment action. However, Plaintiff submitted her letter of resignation four days prior to her final day of employment. Pl.'s Resp., Dkt. No. 71, Ex. 1. This Court has stated previously: "Obviously, firing an employee is the ultimate adverse employment action. However, [where a employee] voluntarily terminate[s] the employment relationship, she cannot show that she suffered an adverse employment action." Wynn v. Paragon Syss., Inc., 301 F. Supp. 2d 1343, 1354 (S.D. Ga. 2004) (J. Alaimo). In Wynn, the Court granted summary judgment to an employer on an employee's Title VII claim, where the employee submitted a resignation along with the stated willingness to work an additional two weeks. The Court noted that the a two-week notice period is nothing more than "a traditional courtesy the employee extends to the employer". Id. The employer is not obligated to allow the employee to serve out the desired two-week period.

Consequently, Defendants' decision to accept Plaintiff's resignation as effective on June 20, 2011, rather than waiting

AO 72A
(Rev. 8/82)

for the full two-week notice period to expire, does not constitute an adverse employment action. Because Plaintiff has not pointed to any valid adverse employment action, Defendants are entitled to summary judgment on Plaintiff's § 1981 claim.

Even if Defendants' actions did constitute adverse employment actions, Plaintiff's claim would still fail because she failed to present evidence that any similarly-situated individual outside of her protected class was treated more favorably. In fact, Plaintiff's deposition and briefing is littered with references to people outside of her protected class being treated in exactly the same manner she was. For example, in response to Defendants' motion for summary judgment, Plaintiff presented the "Preliminary Statement of Carol Lynn Mock." Pl.'s Resp., Ex. 1. Mock states that she is a "50 years [sic] old white female." Id. In her statement, Mock explains that she found Cecelia Harper to be unpleasant and difficult to work with, and that she was terminated for complaining about Harper's conduct, which is essentially the same treatment that forms the basis of Plaintiff's suit. Id. ¶ 6. Tellingly, during her deposition, Plaintiff was unable to point to any evidence that a Diversified employee was ever discriminated against based on his or her race. See Gage Dep. 91-93 (showing Plaintiff is unable to point to evidence that any employee was ever fired due to race); 94 ("Q: But as far as any other

AO 72A
(Rev. 8/82)

employees, or any other people who would be similarly situated, any other African-American employee of Diversified, you have no evidence to show that anybody else was ever discharged or any employment action was taken against them because of their race, correct? A: Correct."). Simply put, Plaintiff has presented no evidence that any similarly situated individual outside of her protected class was treated more favorably.

Perhaps Plaintiff has presented the Court with a genuine issue of fact as to whether Cecilia Harper treated her co-workers unpleasantly, but Plaintiff has not adequately set forth a claim of racial discrimination. Because Plaintiff has presented no direct evidence of racial discrimination, and because the Plaintiff is unable to show any evidence supporting two essential elements of a *prima facie* case of racial discrimination, Defendants are entitled to summary judgment on Plaintiff's § 1981 racial discrimination claim.

### B. Hostile Work Environment

Plaintiff also claims that she was subjected to a hostile work environment in violation of § 1981. In order to state a plausible claim of intentional discrimination based on a hostile work environment, a plaintiff must demonstrate that "(1) [she] belongs to a protected group; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on [her] membership in the protected group; (4) it was severe or

pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir. 2010) (dismissing plaintiff's hostile work environment claim as speculative, where the complaint stated, without more, that plaintiff was Caucasian and harassing coworkers were Hispanic or Latino).

As indicated above, Plaintiff has presented no evidence that she was subjected to any unwelcome harassment based on her membership in a protected group, much less evidence of severe and pervasive harassment. Because there is no genuine issue of fact as to the essential elements of the claim, Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

## II. Disability Discrimination Claim

Plaintiff also claims that she was discriminated against based on her disability. In order to bring suit under the ADA, the plaintiff must exhaust her administrative remedies by filing a discrimination charge with the EEOC. See 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1626.7(a); EEOC v. Summer Classics, Inc., 471 F. App'x 868, 870 (11th Cir. 2012). "Failure to file the [EEOC] charge within 180 days of the alleged unlawful employment practice bars the claim." Summer Classics, 471 F. App'x at 870

12

(citing Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)). Plaintiff has presented no evidence that she filed an EEOC charge. Accordingly, Plaintiff's claims that arise under the ADA are dismissed.

### III. Intentional Infliction of Emotional Distress

Plaintiff's third cause of action claims that Defendants intentionally inflicted emotional distress upon Plaintiff. In order to recover for intentional infliction of emotional distress under Georgia law, a plaintiff "must prove four elements: (1) that the defendants engaged in intentional or reckless conduct; (2) that the conduct was extreme and outrageous; (3) that there is a causal connection between the wrongful conduct and [the plaintiff's] emotional distress; and (4) that [the] emotional distress is severe." Higdon v. Jackson, 393 F.3d 1211, 1222 (11th Cir. 2004) (citing Yarbray v. S. Bell Tel. & Tel. Co., 409 S.E.2d 835, 837-38 (Ga. 1991)). Further, "[l]iability has been found only where the defendant's conduct was 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Id. (citing Kaiser v. Tara Ford, Inc., 546 S.E.2d 861, 868 (Ga. Ct. App. 2001)).

The bar is high to show extreme and outrageous conduct. Here, Plaintiff has no evidence that Defendants engaged in extreme or outrageous conduct. At most, Plaintiff has presented

evidence that an unpleasant and slightly abrasive working environment existed at Diversified. However, disagreeable coworkers, unsympathetic bosses, and challenging workplace tasks are not sufficient to form the basis of a claim of intentional infliction of emotional distress. Because Plaintiff has failed to present any evidence of extreme and outrageous conduct on the part of the Defendants, Defendants are entitled to summary judgment on Plaintiff's claim.

## IV. Defendants' Requests for Attorneys' Fees and Expenses

During the course of this litigation, the parties had multiple disagreements over discovery issues. Plaintiff filed no less than four motions asserting that Defendants had not complied with Plaintiff's discovery request. Dkt. Nos. 46, 59, 72, 84. The Magistrate Judge repeatedly denied those motions, finding that Defendants had complied with all of Plaintiff's requests, based on the submissions to the Court. Dkt. Nos. 48, 65, 81, 88. In responding to each motion, Defendants asked the Court to award reasonable attorneys' fees and expenses based on the frivolous nature of Plaintiff's motions. Dkt. Nos. 47, 61, 75, 85. The Court deferred ruling on the request for fees and expenses.[5]

---

[5] Defendants also requested an award of fees and expenses related to a recusal motion filed by Plaintiff. Dkt. Nos. 89, 90. Plaintiff's recusal motion was denied on August 9, 2012 during a hearing on the parties' motions. Dkt. No. 91.

AO 72A
(Rev. 8/82)

Although Plaintiff filed multiple ill-conceived discovery motions, the Court does not find that her conduct justifies the imposition of attorneys' fees and expenses. Rather, it appears that, as a *pro se* litigant, Plaintiff misunderstood the nature or purpose of federal discovery procedures. As such, Defendants' requests for attorneys' fees and expenses are denied.[6]

### CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment is **GRANTED**. The Defendants' requests for attorneys' fees and expenses are **DENIED**. To the extent that any other motions remain outstanding, those motions are **DISMISSED** as moot. The Clerk is directed to close the case and **ENTER FINAL JUDGMENT** in favor of Defendants on all claims.

**SO ORDERED**, this 11th day of September, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[6] To the extent that Defendants also seek fees and expenses related to Plaintiff's recusal motion, that request is also denied.